Very good. Please proceed, Counsel. May it please the Court, my name is William Graney. I'm Counsel for the appellants, the Payless entities. I'd like to reserve three minutes for rebuttal, if I may. Okay, I'll try to help you, but please keep your eye on the clock, okay? Yes, Your Honor. Your Honor, the District Court's decision in this case permitting Knightbrook Insurance to shift onto Payless the entire cost of settling extra contractual claims for insurance bad faith and an $8 million stipulated Damron judgment, which were not even actionable against Payless, is reversible error for at least two principal reasons. The first of those reasons is that it is settled under Arizona law that equitable indemnity is available, also known as common law indemnity, only when two parties share a common tort liability to a third party. In this case, there was never any common liability or co-extensive obligation between Knightbrook and Payless to the McGills, who were the assinees of Bovra, who's the guy who ran them over. To the contrary, Knightbrook alone faced potential liability for insurance bad faith and for the to redress insurance company claims handling misfeasance and other forms of misconduct in handling a claim. That's not what the District Court suggested. The District Court suggested that your client did not have any liability for the breach of contract because the payment by Knightbrook of the $970,000 extinguished the breach of contract claims against your client. I have two responses to that. The first is that the District Court erroneously failed to recognize that equitable indemnity exists to shift liabilities in tort, not to shift liabilities in contract. You think that was even wrong? It helped your client. Do you think it was even wrong? Your definition is a fault-based concept. I understand what you're arguing. I'm just trying to make sure that I understand your argument because it seems to me, and I'll ask you very straight, if in fact the breach of contract was extinguished on the behalf of your client by the payment by Knightbrook, I'm having a tough time understanding why the negligence would not have equally been extinguished. Well, the negligence claims were time-barred. I understand, but if they had not been time-barred, given the, if you will, the rationale the District Court used, that would have also been extinguished because it only came by way of being your insurer. Well, in fact, the negligence claims were independently barred by the economic loss doctrine because they were essentially claims. I understand your arguments that you want to go that way and give me a lot of other causes. There's a statute of limitations problem, Judge. There's an economic injury problem, Judge. I'll have all those. I used them a lot when I was in your stead, but the bottom line is the rationale of the District Court in extinguishing the breach of contract claims, if there were none of these additional things you're throwing at me, would have also extinguished the negligence claim, would it not? Well... Because it was all because they were, in fact, your insurer, and therefore, being your insurer, that if there was any claim under breach of contract, or if there was any claim under negligence, it would also have been extinguished. The District Court, to answer your question, the District Court has appealed that the only contract claims in the case were for breach of the SLI policy. I understand. The SLI policy is in the record, so the court can review it. The only obligor under that policy, Your Honor, is Nightbrook. Since you do not want to answer my question, let me proceed to the second question. If, in fact, there's any part of the claim which was made against your client which is appropriately extinguished by Nightbrook, is there not some equitable, if you will, remedy, indemnification remedy, for Nightbrook? No, there is not, because they settled other kinds of things. They settled all kinds of claims above, but the claims were brought as negligence, as a breach of contract, as, if you will, insurance, bad faith. That you would have had nothing to do with. I'm suggesting that, as to the claims brought, if there were any of those for which they also extinguished your claim, would there not be equitable indemnification? No, because it's a settled principle of Arizona law that a party cannot seek equitable indemnity for the cost of settling claims that allege its own misconduct and its own negligence and its own fault. That's been the law in Arizona since 1972. You didn't answer my question at all. My question is not they're settling their own claims. I tried to put that out there. This is not about the insurance bad faith claim. This is about the breach of contract and the negligence claim, which was yours, if it was theirs. That's what I'm asking you about. The breach of contract claim was not ours because we're not an obligor under the SLI policy. We're the insured under that policy, your honor. We have no obligations to defend and pay and settle claims brought by the McGill's or BOFRA. Knightbrook did, not Payless. We're the named insured under that SLI policy. So how could we have an obligation under that policy running to BOFRA? Same way the district court found you did. The district court found, in effect, that we were an obligor under the SLI contract. But that's just erroneous. If you read the policy, you'll see that the sole obligor under that policy is Knightbrook. We're entitled to the benefits as an insured under that policy. We don't have obligations of good faith, fair dealing, coverage, defending and indemnifying claims. Knightbrook does. And so when the district court found a court in satisfaction, it didn't extinguish any liability we had under the SLI policy because we're not liable under the policy. We're not an insurance company. And the negligence claims are nothing more than contract claims dressed up in the garb of tort law. They're divorced from bodily injury or property damage. What was BOFRA actually saying and the McGill's? What they were saying, Your Honor, was you payless promised us a free lunch and you didn't deliver on the promise. Now that type of claim lies in contract. It's not a fault-based, tort-based claim. And so if you say, well, as the Hatch case recently held, that you have to prove that the and proximately caused harm, what was the harm that was proximately caused to BOFRA? The answer is an economic loss. He didn't suffer any bodily injury or property damage. So the negligence claims against payless never had any legs to begin with. They were substantially defective from the get-go because they're barred by the economic loss doctrine, which is expansively applied as this expansively applied by the Arizona Supreme Court. So the negligence claims were dressed up contract claims. The only liability that payless really ever faced was a claim which may be breach of the rental agreement. But the district court found, and nobody has appealed, that there was no claim for breach of the what I said earlier, there's three reasons why the district court's judgment should be reversed. One reason is the lack of any common or coextensive obligation between Knightbrook and payless with regard to the bad faith and Dameron claims. That's fatal under Herstam and other Arizona cases. Two, the fact that they were allowed by the district court to shift onto payless the cost of settling claims alleging their own misconduct. That violates the settled Arizona principle that a party cannot get equitable indemnity for the cost of settling its own misconduct and that a party seeking equitable indemnity must be entirely, not partly, entirely free of fault, negligence, and culpable misconduct. And third, let's not forget the recent Hatch case, which opposing counsel correctly sent in as a 28-J authority. It has some things in there of interest to both sides. And what's of interest to me is that Hatch unequivocally rejects the district court's finding that it can rely on an attenuated chain of but-for causation in order to pin liability on payless for the cost of their settlement of their own bad faith and Dameron exposure. The district court assumed, Your Honor, that because payless is desk agent and it's hotly disputed what occurred at that counter, because the desk agent lit the fuse by somehow confusing Bovra into thinking that he had free insurance coverage, but for that nothing else would have happened. He wouldn't have made a claim. Nightbrook wouldn't have mishandled the claim. He wouldn't have entered into a Dameron judgment, and on and on. Hatch holds that that but-for causation is not enough to pin equitable indemnity on anybody. Instead, it's required that you show active negligence and proximate cause. The district court, in this case, if you read the final order, specifically declined to find either negligence or cannot survive Hatch. And I would also suggest that even if this went back to the district court, which the first time around on a fully developed trial record couldn't find any evidence of negligence by payless, even if it went back to the district court, you'd have to ask the question, Was there a breach of legal duty and did it proximately cause what? Bodily injury or property damage? Answer, there's no bodily injury or property damage to Bovra, whose rights were assigned to the McGills. So the negligence claim would be substantively defective on its face, and not just time barred, because you can get equitable indemnity for a time barred claim, but you can't get it for a claim that's barred by the economic law. You mentioned you wanted to save our thought three minutes. Do you want to save any of your time? It's up to you, but it's you're not two minutes and 40. Oh, yeah. Okay, sure. I'm sorry. Good morning. Good morning, Your Honors. May it please the court. My name is Gina Sluga, and I represent the plaintiffs and appellees in this matter. Your Honor, the appellants, Your Honors, the appellant's position relies on a flawed legal premise and a series of flawed factual arguments. The briefing on the argument suggests that what happened below was that Judge Campbell exceeded his authority and granted summary judgment in our client's favor, and that all they need to do is point out some fact questions in order to overturn the judge's ruling. But that's not what happened. This case went to a trial. There are no questions of fact left. The questions of fact were resolved by the finder of fact at a trial, and so pointing out issues that were disputed below is no longer relevant. But let's start with the legal premise. We have pages and pages of briefing and even argument today talking about whether or not the Knight entities sufficiently extinguished the liability of Payless, whether they extinguished all of the liability, or a common liability, or a coextensive liability. But they're asking the wrong question. As Judge Campbell ruled, based on, at the time, simply dicta from the Arizona Court of Appeals and MT Builders, but it's now the law of the Arizona, from Hatch. There are two ways in which one can seek indemnity under the holding that Judge Campbell issued, which has now been wholeheartedly embraced by the Court of Appeals in Hatch, cited with approval and embraced. And sure, there are two methods, and one is the one of which counsel spoke, extinguishing an obligation of a party, but the other is simply about fault. It is an equitable remedy. The court, in order to find that the Payless entities were at fault, did not need to go through the legal standards of duty, breach, negligence. He needed to find fault, and he did. He found fault at the conclusion of a trial. Hatch is dispositive. Let me just interrupt. I know you have a chain of time. Please. No, that's what we're here for. One of the things that troubled me a little bit about this case is the fact that the, if you will, the liability between Knightbrook and Payless were, it wasn't coextensive. Knightbrook was looking, I've had, the numbers may be wrong, but I'm saying eight million roughly versus one million roughly. What role, if any, should that play in our analysis about what is obviously an equitable remedy? Yes, Your Honor, I have two answers. The first is that under Hatch, the landowners, the Hunts, had a contract with Hatch who in turn subcontracted some sewer line work. That line work was performed negligently. Litigation ensued. When Hatch settled the liability and sought indemnity from Solomon, that wouldn't necessarily have been a coextensive liability, and the court didn't discuss whether it was or not because it didn't matter. But as a different liability and probably greater than a subcontractor. It didn't matter that it wasn't a coextensive liability. That entire issue is out the window because the satisfaction of an obligation, the extinguishing of a liability, is not part of the standard under the Restatement Section 78. Did the indemnity defendant in Hatch argue that there should not be equitable indemnity because there was no coextensive liability? I don't know the answer to that, Your Honor. It is not set forth in the briefing that it was right, but so that we don't know if the court actually considered that issue. We don't know whether the specific question was raised, but the court did say with specificity that the Section 78 standard is a different one, and it provides a different method through which a party can seek equitable indemnity, and it has nothing to do with the extinguishing of an obligation. It's a different remedy. It's a different method, and the court embraced that wholeheartedly, so it kind of rejected that. Isn't 78 a variant of 76? The Restatement Third, Section 23 and 24, and 24 also was cited by Judge Campbell, suggests that it is. They suggest that equitable indemnity and equitable subrogation are simply labels that we apply to a situation in which equity is applied, but that again, fault is a substitute, is a different standard, and it satisfies it, but as Judge Smith pointed out earlier, there also was a great deal of the liability that was extinguished. The contract claim was the claim to which pay less was most at risk. Judge Campbell found that. Do you agree that the coextensive liability is a requirement for equitable indemnity under Section 76? I don't think that that has been clearly held by any Arizona court, and I don't think that the Hatch courts would support that proposition. Assume with me that Section 76, equitable indemnity, does require coextensive liability. Why wouldn't that carry over to Section 78? Because again, as Hatch rules, these are different methods. There's nothing in the opinion of the Court of Appeals in Hatch to suggest that it would carry over. It does word them as different remedies, but the other answer I have for your one, at the time the settlement was made, there's a bit of a legal misnomer here that the night entities at that moment faced this $8 million exposure for bad faith. There's been quite a lot of talk of that. There was a finding at court there wasn't a bad faith, so let's dispense of that, but let's talk about the legal issue. There is nothing in the record to suggest that at the time of the settlement, the night entities ever had been provided an opportunity to settle the claims against its putative insured Bovary for an amount that would have been within the limits of the available coverage, the $970,000 in SLI coverage that the payless entities led Mr. Bovary to believe that he had. Didn't have an opportunity to do that, and under Arizona law, that was dispositive of the issue of the extent of the night entities' obligations. Under Rogan v. Auto Owners, Moore v. American Family, State Farm v. Payton, if you don't have an opportunity to settle for an amount within the limits, a carrier's obligation is capped by the limits of the policy. So actually at the time, the extent, the exposure was largely coextensive. The critical moment in the litigation came when the opportunity to settle for $970,000 presented itself. So your position is that regardless of the bad faith claim, which of course could not have applied to Payless, it's not an insurance company, which, let's just say, arguing $8 million, you're saying that under Arizona law that the fact, as you allege it, that your client had no opportunity to settle the matter before it was settled with Payless meant that your liability was capped at what they paid? Yes, Your Honor, at the limits of the available coverage. That was what, a million? It would have been $970,000, and that's clear under State Farm v. Painter, which is at 122 Arizona 198. So the bottom line, from your perspective, the limits, the liabilities are coextensive by virtue of what happened? Exactly, at that moment, they were. At that moment. And does that fit under Section 76? Let's factor into this what your client did. Your client paid the money, but did not extinguish any claims against Payless. How does that factor into your analysis? I'm going to answer your question with a bit of a rhetorical question. Oh, I'm not going to answer your question. You don't need to, but the question that I will pitch as I begin to answer it for you is, what was Knight supposed to do? At this moment, the McGill plaintiffs... against everybody for $970,000, if in fact that's what your argument really is. I suppose it could have committed that, that, that it could have spent $970,000 it didn't owe. Hook for Payless for some insurer, or potentially on the hook for Payless for some insurable claim. That's inaccurate. Actually, the findings at trial from Judge Campbell were that there was absolutely nothing about the suit against Payless that could have been covered. That's afterwards. I'm talking about what they sued for. What Payless was sued for by the McGills. Payless and your client. Yes. By McGills were sued for breach of contract. Yes. Negligence, insurance bad faith. Yes. Yes, they were sued for those things. All you're saying is that the insurance bad faith can only arise because we didn't... can only arise because if we'd had a chance to settle for policy limits, we should have. No. There are myriad ways in which one can commit bad faith. Okay, then why does the $970,000 make any difference? Because the State Farm versus Painter case says that with respect to the specific question of the exposure, once that's happened on the contract, it has to be capped at $970,000. And the effort to collect the $8 million stipulated judgment was an effort to collect on the policy through the Damron v. Sledge line of cases. And so here, the McGills attorney knew that they had this fatal problem in their claim, that they hadn't given the opportunity to settle for limits. And so then that offer was presented tonight. They needed to solve that problem, and they gave a very time-limited opportunity to settle for $970,000. Which you said, I'll be glad to take it, but you can sue Payless for anything you want. And what would have happened then? Our insured, who suggested it was bad faith to even ask that they pay half of the settlement, we were supposed to leave them hanging and exposed to the McGills who were actually seeking additional damages beyond the $970,000 for tort damages, emotional distress. You could have ended it for $970,000, got rid of them, got rid of you, it had all been over. Instead, what you said was, I'll settle my claim and I'll let you go after them for whatever you can get. We didn't do that. That's exactly what you did. Well, you took over their claim. We took over with a safety net. We knew the damages now were capped at the $970,000 in insurance coverage that the Payless entities led Mr. Bovary to believe that he had. There was no risk of punitives. There was no risk of tort damages. There was no risk of anything other than that contract amount because of the safety net the Knight entities provided. The Knight entities knew when they were presented with the settlement opportunity that they had a chance to mitigate their damages, which, of course, Arizona law requires that they do. Were they to reject it and roll the dice on the $8 million risk, walking away from an opportunity to settle within the amount within limits? Well, let me ask you this, though. People take out insurance to cover for and hope for unexpected liabilities. What did Payless get out of hiring your people? What Payless got was a commercial opportunity to sell insurance to renters from which they profited handsomely. Okay. But they really weren't covered by you in any meaningful way? Any meaningful way. I want to qualify that and be very careful about it. What the court found based on the testimony of both Payless's experts and former general counsel of the Knight entities was if there was a car rented to a renter and there was an accident that resulted in both the renter and Payless being sued for the auto liability for some reason, for instance, the renter was someone who had an unsafe record that they should have known about or was intoxicated or the accident was caused by a faulty maintenance problem, there in that context, Payless would have had coverage for the auto claim because this is auto liability policy. Basically, Payless, from your perspective, is no more than your insurance agent. From that perspective, they are a licensed insurance agent and they were selling insurance. What's your relationship with them from your perspective? Well, I don't ignore the fact that they are the named insured under the policy. So they are a dual situation. They are named insured under the policy. There are certain obligations that flow by and between both parties to that contract. Neither is to do anything that would impair the rights of the other. But as vis-a-vis insurance, no, their insurance, their insurer to whom they tendered this case and who defended them throughout the case was Great American Insurance and there's now a reported decision from District Court Judge Rosalyn Silver over all of that issue. So Great American Insurance in another case was the carrier to whom they looked for protection against these claims. I see. So your Knightbrook was not the insurance company to whom they looked for this particular accident, right? Absolutely correct. They didn't tender the claim. They never asked for protection in that way. Why did you defend them? We didn't. Great American Insurance did. Oh, I apologize. We were co-defendants for a time and then the opportunity came to settle. But Knight knew it hadn't done anything wrong. It had to take the offer of 970. It had to mitigate the exposure. Okay. So I'm glad you've returned to that. And I'm not sure what your position is. Did Knight have any legitimate exposure or plausible exposure for the $8 million Dameron judgment for the bad faith? If they had rejected the opportunity to settle within the last... You're not answering my question. Oh, I'm sorry. Did Knight have any legitimate exposure to the $8 million or was the only plausible exposure to the 970? The only realistic exposure both factually and legally in Arizona before that offer was to the 970 because of the State Farm v. Painter case. Okay. So that means that the maximum amount of damages was $970,000 and Knightbrook settled that claim for 100% of the maximum amount of damages. When does that ever happen? On the contract claim it was kept. They were not going to be able to collect the $8 million stipulated judgment as a breach of contract. But they did allege tort claims as well. And in a jurisdiction like Arizona, we can't forget the threat of those claims. Was some exposure to Knightbrook of a judgment that exceeded $970,000? As there was to Payless because there were tort claims asserted against them as well. So conceivably because there was exposure of greater than $970,000, Knightbrook's liability might not have been coextensive with Payless' liability. We don't know whether it was. We have reasons to believe it was very close. But we also know that under the Hatch decision, there was no discussion of whether that's even a required standard. So what this appeal will come down to, perhaps, on at least the coextensive liability issue, is whether the coextensive liability requirement from Section 76, assuming it exists, also carries over to Section 78. I suppose, knowing that under Arizona law, there is no Arizona court which has enforced this coextensive liability requirement. This is law from other jurisdictions. What we know is that Judge Campbell, who has been an esteemed judge in this jurisdiction for years, found it to be a separate standard. The Court of Appeals has embraced that wholeheartedly with no discussion whatsoever. And we know that the two parties to that case would not have had coextensive liability. The Solomons were positioned very differently. The Hunts hadn't even sued the Solomons in that case. The Hunts didn't have a contract with the Solomons. They were a subcontractor. But the court held that the general contractor settlement of its liability, which was not coextensive, and in that case, the court held that... You're over your time, so let me just ask my colleague, do you have any additional questions? No. Okay. We thank you very much for your arguments. Very helpful. Thank you. Counsel, you have a little rebuttal time. Thanks, Your Honor. First of all, under Section 76 or 78, the foundational prerequisites of showing a common liability, the rule that you can't get indemnity for the cost of settling your own misconduct or fault, and the requirement of proving negligence and proximate cause remain. It doesn't matter whether you're under 76 or 78. Counsel, what's your best argument against your opponent's view that the liability, the potential liability, both under contract, I guess, and tort law, was coextensive between Payless and Knightbrook? The State Farm v. Painter case was not cited in their briefs. It was not cited below. It's a brand-new argument. I've not even read the decision, and it should be waived. That's my first argument. My second argument is the real world. Yeah, okay. My second argument is if you read nothing in the record, read pages 241 to 246 of the ER, which is a testimony of Knightbrook's CEO, Eric Jarvis, who testified unequivocally that the reason he settled with the McGills was that Knightbrook faced extra-contractual liability on top of the 970 of $8 million or more for tortious bad faith and for an $8 million Dameron judgment, and that those extra-contractual claims were the reason that he settled with the McGills, but for that he wouldn't have settled. That testimony is clear, it's unrebutted, and it shows exactly what they were doing. But it seems as if, if I buy what counsel's suggesting, that she's saying she agrees with that because if they hadn't settled for the 970, they would have been subject to the $8 million because the 970 was policy limits, and if you don't settle within policy limits, you can be responsible for the $8 million. That's her argument. That's not an argument that they've made before, and it's sort of here for the first time. But I will tell you that somebody asked, could Knightbrook have settled all claims with an opportunity to settle? Well, yes, the McGills were happy as clams to get the 970 because they knew that Boever's claim for free insurance was weak. They were willing to release their claims against my client until Knightbrook waded in and took an assignment in a collusive arrangement to foist liability for their settlement onto Payless. But after all, the district judge found there was no problem. In fact, the district judge held opposite of that. He said there was no, if you will, when he got to the end, you did not prove the insurance bad faith claim. Based on a legal error, the assumption that you can't have bad faith when you don't have a covered claim submitted, read the Dease case from 1992 and a whole series of court of appeals cases which show that it's independent, the obligation of good faith and fair dealing and actionable bad faith are independent of whether a covered claim is submitted under the policy. Any other questions? Thank you both for your arguments. Very helpful. Obviously very knowledgeable in your area of law. So thank you very much. The case just argued is submitted.
judges: M. Smith, N.R. Smith, Feinerman